AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black iPhone with a with Apple Logo sticker<br>Seizure No. – 2024250100028303-0001<br>("Target Device 3") | )<br>)<br>)   Case No.  **24-mj-0689**<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841 | Distribution of Controlled Substances |
| 21 USC Sec. 846 | Conspiracy to Distribute Controlled Substances |
| 21 USC Sec. 952/960/963 | Importation and Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Gwendolyn Perez*
*Applicant's signature*

Gwendolyn Perez, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: February 21, 2024

*Judge's signature*

City and state: San Diego, California     Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A-3

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black iPhone with a with Apple Logo sticker
    Seizure No. – 2024250100028303-0001
    ("Target Device 3")

Target Device 3 is currently in the possession of the Drug Enforcement Administration, located at 2055 Sanyo Avenue, Suite 220, San Diego, California 92154.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 16, 2024, up to and including February 16, 2024:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to indicate efforts to distribute controlled substances;

    c.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States and distribution within the United States;

    d.    tending to identify co-conspirators, criminal associates, or others involved in the importation of controlled substances from Mexico into the United States and distribution within the United States;

    e.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    f.    tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

//

//

    g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Section 952, 960, 963, 841 and 846.

# AFFIDAVIT

I, Special Agent Gwendolyn Perez, being duly sworn, hereby state as follows:

# INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s), (Collectively, the "Target Devices"):

>Black iPhone in a Pink and Floral Phone Case
>Seizure No. - 2024250100028301-0004
>("Target Device 1")

>Pink iPhone in a Clear and White Phone Case
>Seizure No. – 2024250100028302-0001
>("Target Device 2")

>Black iPhone with a with Apple Logo sticker
>Seizure No. – 2024250100028303-0001
>("Target Device 3")

>Black Koobee Cellphone
>Seizure No. – 2024250100028303-0001
>("Target Device 4")

>Black Samsung Cellphone
>Seizure No. – 2024250100028304-0002
>("Target Device 5")

>Blue Motorola Cellphone in a Grey and Black Phone Case
>Seizure No. – 2024250100028305-0001
>("Target Device 6")
>(collectively, "the Target Devices")

as further described in Attachments A-1 through A-6, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846 (conspiracy to distribute controlled substances) and Title 21, United States Code, Sections 952, 960, and 963 (conspiracy to import controlled substances) as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Michael Ramos MORALES, Cesar Ignacio MEZA, Armando RODRIGUEZ Gallo, Jamie Rose PEREZ, and Sheila Celeste TORRES (Defendants).  The Target Devices are currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Drug Enforcement Administration (DEA) since October of 2019. I am currently assigned to the DEA Office in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Quantico, VA.

4. During my tenure with DEA, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is

to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to indicate efforts to distribute controlled substances;

    c.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States and distribution within the United States;

    d.    tending to identify co-conspirators, criminal associates, or others involved in the importation of controlled substances from Mexico into the United States and distribution within the United States;

    e.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    f.    tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

    g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

7. On February 15, 2024, at approximately 1:22 PM, a white 2014 Buick Lacrosse bearing Mexican license plates (the vehicle) applied for entry into the United States from Mexico at the Otay Mesa Port of Entry. The driver of the vehicle was also the sole occupant of the vehicle at the time of entry. In vehicle primary, AT-CET a Customs and Border Protection Officers (CBPO) spoke with the driver of the vehicle who appeared nervous and had shaky hands. The driver provided two negative customs declarations. The CBPO observed that the rear driver's side door was heavy. The CBPO examined the rear quarter panel and noticed that there were packages of what appeared to be controlled substances within. The vehicle was referred to secondary for further inspection.

8. During secondary inspection, an x-ray of the vehicle showed anomalies within the doors and rear quarter panels of the vehicle. A narcotics detection dog also gave a positive alert to the vehicle. Based on training and experience, including having found packages similarly concealed in the doors and quarter panels of vehicles many times in the past which proved to contain drugs after field and lab testing, officers and agents believe

the vehicle contained prohibited drugs.

9. To facilitate further investigation, the packages were left in place and not opened or inspected. Law enforcement officers decided to try to follow the vehicle to its intended destination. Because of the exigencies of the situation and to avoid a longer delay which might cause the driver or any co-conspirators to suspect or detect that the packages had been discovered by law enforcement, agents installed two GPS tracking devices on the outside of the vehicle, so the vehicle and the driver could leave the Port of Entry and continue to their intended destination. One of the trackers was placed underneath the vehicle on the rear passenger side of the vehicle as well under the driver's side of the vehicle. The second GPS tracking device was installed for purposes of redundancy; in case a tracker stops reporting for various reasons. The tracker warrant was signed by Judge Allison H. Goddard at approximately 2:23 PM at which time it was initially activated.

10. From the time the vehicle was released from the port, law enforcement officers maintained constant surveillance of the vehicle until the driver dropped the vehicle off at a shopping plaza located in Chula Vista, California at approximately 2:05 PM. Law enforcement officers continued to maintain constant surveillance of the vehicle until approximately 10:09 PM when a female driver, subsequently identified as Jamie Rose PEREZ (PEREZ) arrived and departed with the vehicle. Law enforcement officers surveilled the vehicle until PEREZ parked the vehicle at a location in Imperial Beach, California. PEREZ then left the area and the vehicle was left there overnight. Law enforcement officers maintained constant surveillance of the vehicle overnight.

11. On February 16, 2024, at approximately 9:51 AM, a female was seen entering the driver's seat of the vehicle. The vehicle began its way northbound until it ended up in Oceanside, CA in a residential area while law enforcement officers maintained constant surveillance. At approximately 1:25 PM, law enforcement officers witnessed an unknown male, later identified as Michael Ramos MORALES, approaching the driver's side window and conversing with the driver of the vehicle. The male then walked alongside the vehicle and guided it to the curb where it parked just south of a house in Oceanside, CA (the

residence). The female driver got out of the vehicle and was seen approaching the front door of the residence. Law enforcement officers maintained constant surveillance of the vehicle during this time.

12. At approximately 6:29 PM, law enforcement officers observed the vehicle being driven off the street and into the garage of the residence. During the course of the surveillance of the residence, law enforcement officers heard noises from the garage that sounded like power tools and hammering. Law enforcement officers attributed these sounds to be persons attempting to remove the narcotics concealed in the vehicle.

13. A state search warrant was obtained for the residence. Law enforcement officers executed the search warrant at approximately 8:30 PM. During the course of the execution of the search warrant, law enforcement officers observed Michael Ramos MORALES, Cesar Ignacio MEZA, Armando RODRIGUEZ Gallo, Jamie Rose PEREZ, and Sheila Celeste TORRES all participating in some manner in the removal of narcotics from the vehicle.

14. MORALES, MEZA, RODRIGUEZ Gallo, Jamie Rose PEREZ, and Celeste TORRES were arrested at approximately 8:30 PM.

15. During a post-Miranda interview, PEREZ admitted that she was going to be paid $5,000 USD to move the vehicle from the shopping center in Chula Vista, California to a location in Oceanside California.

16. MORALES, MEZA, RODRIGUEZ Gallo, PEREZ, and TORRES were arrested and charged with a violation of Title 21, United States Code, 952, 960, 963, importation of a controlled substance and Title 21 USC § 841 and 846 Conspiracy to Distribute a Controlled Substance (Felony).

17. Initial searches at the scene resulted in the seizure of approximately 17.66 kg of a powdery substance that field tested positive for the characteristics of fentanyl, 11.16 kg of pills that field tested positive for the characteristics of fentanyl, and approximately 9.08 kg of a substance that field tested positive for the characteristics of cocaine. After this initial search, the vehicle was taken back to the POE for additional inspection. Additional

packages containing controlled substances were located which resulted in the seizure of approximately 35.58 kgs of a powdery substance that field tested positive for the characteristics of fentanyl, approximately 2.18 kgs of pills that field tested positive for the characteristics of fentanyl, and approximately 11.88 kgs of a substance that field tested positive for the characteristics of cocaine.

18. The aggregated totals of controlled substances seized between the residence and car were approximately 50.24 kgs of a powdery substance that field tested positive for the characteristics of fentanyl, approximately 11.26 kgs of pills containing of a substance that field tested positive for the characteristics of fentanyl, and approximately 23.04 kgs of a substance that field tested positive for the characteristics of cocaine.

19. Target Device 1 was found and seized by Special Agents who were tasked to search residence when defendants were taken into custody. During the process of identifying personal property, PEREZ was shown Target Device 1 and identified Target Devices 1 as belonging to her. PEREZ entered the passcode to utilize Target Device 1 to contact someone identified by her as her father.

20. Target Device 2 was found and seized by Special Agents who were tasked to search the residence when defendants were taken into custody. During the process of identifying personal property, TORRES was shown Target Device 2 and identified Target Device 2 as belonging to her. TORRES entered the passcode to utilize Target Device 2 to contact someone identified by her as her cousin.

21. Target Devices 3 and 4 were found and seized by Special Agents who were tasked to search residence when defendants were taken into custody. During the process of identifying personal property, MORALES was shown Target Device 3 and Target Device 4 and identified Target Devices 3 and Target Device 4 as belonging to him.

22. Target Device 5 was found and seized by Special Agents who were tasked to search the residence when defendants were taken into custody. During the process of identifying personal property, MEZA was shown Target Device 5 and identified Target Device 5 as belonging to him. MEZA entered the passcode to utilize Target Device 5 to

contact persons identified by him as his "mama" and "mujer".

23. Target Device 6 was found and seized by Special Agents who were tasked to search the residence when defendants were taken into custody. During the process of identifying personal property, RODRIGUEZ Gallo was shown Target Device 6 and identified Target Devices 6 as belonging to him.

24. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Devices to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning on January 16, 2024, up to and including February 16, 2024.

## METHODOLOGY

25. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary

word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

26. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

28. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//

# CONCLUSION

29. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960, 963, 841, and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1 through A-6 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Gwendolyn Perez*
Special Agent Gwendolyn Perez,
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 21st day of February, 2024.

Honorable Michael S. Berg
United States Magistrate Judge